# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 16-00584-HB |
| Talmadge Knight, Jr., | Chapter 7 |
| Debtor(s). | **ORDER DENYING APPROVAL OF SALE FREE AND CLEAR OF LIENS** |

**THIS MATTER** came before the Court for hearing on the Notice and Application for Sale of Property Free and Clear of Liens ("Motion") filed by Robert F. Anderson, Chapter 7 Trustee[1] and Objection filed by Apex Bank.[2]

## FACTS

The facts relevant to this Motion are not in dispute. Trustee seeks approval of a sale of real estate that is property of the estate. The real estate consists of 63.28 acres on Ridge Spring Highway in Saluda County, South Carolina, bearing that County's tax map no. 101-00-00-025 (the "Saluda Property").

Apex obtained a judgment in Edgefield County against Debtor Talmadge Knight, Jr., entered on June 14, 2012, in the amount of $1,186,216.08. This judgment was transcribed in Saluda County on August 15, 2012. A second judgment was entered in Edgefield County against Knight and in favor of Apex on June 11, 2014, in the amount of $500,773.88. This judgment was transcribed in Saluda County on August 28, 2014. At the time each judgment was placed on the records of Saluda County, Knight owned the Saluda Property. On September 17, 2014, Knight transferred the Saluda Property to Ambler Road, LLC ("Ambler"), an entity owned solely by Knight.

---

[1] ECF No. 93, filed Sept. 14, 2017.
[2] ECF No. 95, filed Oct. 5, 2017.

Knight filed a petition for relief under Chapter 7 on February 9, 2016, and Anderson was appointed as Trustee. On May 10, 2016, Apex filed secured proofs of claim in the amounts of $1,476,254.09 and $542,324.36, attaching copies of the judgments and the transcriptions.[3]

In October 2016, Trustee initiated an adversary proceeding against Ambler, Knight and others to avoid prepetition transfers of real property as fraudulent conveyances under 11 U.S.C. §§ 548 and 550.[4] Apex was not named as a party to the adversary proceeding. A settlement order was entered on July 6, 2017, setting aside the transfer of the Saluda Property to Ambler, but because Ambler had no other assets Trustee would not receive any monetary judgment against Ambler.[5] Additionally, Knight's wife was to pay the estate $345,000.00 and his wife and son were able to maintain their interests in the real properties transferred to them prepetition.

An *Order Allowing Contingency Fees for Attorneys for Trustee* was entered on July 10, 2017 ("Compensation Order").[6] The Compensation Order references the adversary proceeding and Trustee's counsel, Gleissner Law Firm, LLC, sought allowance of fees of 33 1/3% plus costs after the settlement thereof. It states "[t]he settlement was for $345,000.00 and the transfer of certain farm land for the estate to sell with an approximately value of $180,000. Thus, the contingency fee is $115,000.00, plus one third

---

[3] POC Nos 17-1 & 19-1. Apex also filed a claim for a third judgment it obtained against Knight, but it is not relevant here. *See* POC 18-1.
[4] *Anderson v. Knight et al.*, Adv. Pro. No. 16-80142-hb (Bankr. D.S.C. Oct. 7, 2016). In addition to the transfer of the Saluda Property to Ambler described herein, Trustee sought the avoidance of the following transfers by Knight: a 2009 transfer of real property located in Beaufort County to Knight's wife; a 2009 transfer of Linda Street property in Saluda County to Knight's wife; a 2010 transfer of Rock N. Creek property in Saluda County to Knight's wife and son; and a 2014 transfer of two other real properties in Saluda County to Ambler.
[5] ECF No. 54 (Adv. Pro. No. 16-80142-hb).
[6] ECF No. 78.

of the net sales proceeds from the sale of the farm land . . ." The Order found that "Gleissner Law Firm, LLC be allowed the sum of $115,000 for fees, plus one third of the net sale proceeds from the sale of the farm land . . ." The "farm land" as described in the Compensation Order includes the Saluda Property.

Jackson Cobb was retained by the estate and on July 14, 2017, approximately one week after settlement of the adversary proceeding, he advertised and listed the Saluda Property for sale. Cobb testified regarding his marketing efforts and difficulty in finding a buyer. Trustee eventually received an offer to purchase the Saluda Property from Knight's wife, Patricia Knight. After negotiation, Trustee agreed on a sales price of $146,000.00.

The sale is noticed in Trustee's Motion. Trustee proposes a sale of "63.28 acres on Ridge Spring Highway near Saluda, SC, *Lexington County* TMS #101-00-00-025." (emphasis added). The Motion states there are no liens or mortgages. The Motion gives notice that the sale shall be free and clear of liens, with proceeds applied to approximately $900.00 in costs, $14,600.00 for Cobb's commission, and estimated Trustee fees of $10,550.00. The Motion states:

> By [the Compensation] Order entered 7/10/17 . . . the Trustee was authorized to pay to Gleissner Law Firm, LLC, one-third of the net proceeds from the sale of this property, which property was recovered through the efforts of Gleissner Law Firm, LLC in Adv. Pro. No. 16-80142. The Trustee shall pay to Gleissner Law Firm one-third of the net sales proceeds once received.

Any amounts remaining would be available to the estate for the claims of creditors. The Motion does not propose any specific payment to Apex nor make any reference to its liens. From a review of the sale Motion and considering the arguments of counsel, it appears that, for purposes of compensation to Gleissner, Trustee defines "net sale proceeds" as an amount that does not consider Apex's liens on the Saluda Property.

3

Apex objects to the sales price, the sufficiency of Trustee's Motion, and the proposed distribution of proceeds.

### DISCUSSION AND CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O) and this Court may enter a final order.

Section 363(b)(1) provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). There is no dispute here that the Saluda Property is included within the definition of property of the estate.

The Bankruptcy Rules include certain requirements to ensure proper notice and an opportunity to object.[7] Additionally, SC LBR 6004-1 requires substantial compliance with a form designed to disclose certain information about the sale, including liens, distribution of sales proceeds and the benefit to the estate.

---

[7] Rule 6004 of the Bankruptcy Rules provides:

> (a) NOTICE OF PROPOSED USE, SALE, OR LEASE OF PROPERTY. Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code.
> . . . .
> (c) SALE FREE AND CLEAR OF LIENS AND OTHER INTERESTS. A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee.

Fed. R. Bankr. P. 6004. Rule 2002 requires the sale notice to "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections. The notice of a proposed use, sale, or lease of property, including real estate, is sufficient if it generally describes the property." Fed. R. Bankr. P. 2002(c)(1).

After notice, and in order for the Trustee's proposed sale to be approved, he must meet the business judgment test.

> In determining whether to approve a sale proposed by a trustee under [§ 363(b)(1)], courts generally apply a business judgment test. Although the Trustee's business judgment is to be given "great judicial deference," the Court must scrutinize whether the Trustee has fulfilled his duty to "maximize the value obtained from a sale, particularly in liquidation cases."

*In re Derivium Capital, LLC*, 380 B.R. 392, 404 (Bankr. D.S.C. 2007) (quoting *In re Bakalis,* 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)). "An exercise of such business judgment includes disposition of property if the trustee determines that such disposition is in the best interest of the estate." *In re Lakeside Dev., LLC*, C/A No. 11-05211-DD, 2012 WL 619071, at *4 (Bankr. D.S.C. Feb. 24, 2012).

To sell property free and clear, Trustee must meet the requirements of § 363(f).[8] Trustee asserts a sale free and clear is warranted, reasoning that Apex's judgment liens are in bona fide dispute under § 363(f)(4) because Trustee's interest in the Saluda Property is superior to that of Apex. In support of the sale and proposed distribution, Trustee relies on § 551 and the state court "Diligent Creditor Doctrine," and calls the Court's attention to the Compensation Order, Trustee's recovery efforts in the adversary proceeding, and the efforts to market the Saluda Property.

---

[8] This provision of the Code provides:
    **(f)** The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
        **(1)** applicable nonbankruptcy law permits sale of such property free and clear of such interest;
        **(2)** such entity consents;
        **(3)** such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
        **(4)** such interest is in bona fide dispute; or
        **(5)** such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
11 U.S.C. §363(f).

To determine a creditor's interest in property, the Court must look to state law. *See In re Houston*, 409 B.R. 799, 809 (Bankr. D.S.C. 2009) ("While federal law defines a trustee's avoidance powers, state law governs the determination of property rights." (citing *Midlantic Nat'l Bank v. Bridge (In re Bridge),* 18 F.3d 195, 200 (3d Cir. 1994)); *In re Little*, 225 B.R. 593, 594 (Bankr. D.S.C. 1997) ("Unless bankruptcy law provides otherwise, property rights of a bankruptcy estate are determined by state law. This includes the nature, validity and perfection of security interest in personal property." (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed.2d 136 (1979)). S.C. Code Ann. § 15-35-810 provides that judgments entered in a court in South Carolina create a lien upon the real estate of the judgment debtor situated in any county in which the judgment or transcript thereof is entered. The judgment lien begins from the time of entry and continues for a period of ten (10) years. *Id.* Generally, once a judgment lien attaches to the real property, it remains an encumbrance on the land despite any subsequent transfer by the judgment debtor.

Trustee did not provide any authority to the Court from which it can find that Apex's liens were affected by the transfer or recovery of the Saluda Property, or that they are in bona fide dispute. Although § 551 preserves avoided transfers for the benefit of the estate, *see e.g., Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 502 (D.S.C. 2000), it is intended to prevent a junior lienholder from improving its position at the expense of the estate when a senior lien is avoided – not to allow priority in favor of the estate over senior, perfected liens. *In re Mathiason*, 129 B.R. 173, 177 (Bankr. D. Minn. 1991), *aff'd,* 170 B.R. 662 (D. Minn. 1992), *aff'd,* 16 F.3d 234 (8th Cir. 1994); *see also In re Haven, Inc.*, 326 B.R. 901 at \*5 (6th Cir. B.A.P. Apr. 7, 2005) (stating that preservation under § 551

6

"does not confer on a trustee any greater rights than were held by the [recipient of the avoided transfer] prior to the avoidance." (citations omitted)). Therefore, § 551 cannot be used to give Trustee's interest in the Saluda Property priority over Apex's prior judgment liens.

The "Diligent Creditor Doctrine" also does not support the sale proposed in the Motion. Trustee asserts that, under this Doctrine, the creditor:

> whose legal diligence has pursued the property into this court, is entitled to a preference as the reward of his vigilance; and it would seem unjust that the creditor who has sustained all the risk and expense of bringing his suit to a successful termination should in the end be obliged to divide the avails thereof with those who have slept upon their rights.

*Ex parte Roddey*, 171 S.C. 489, 172 S.E. 866, 869 (1934) (internal quotation marks omitted). Apex's liens were perfected upon transcription of the judgments in Saluda County, giving public notice of the liens. *See* S.C. Code Ann. § 15-35-810. No further action was required of Apex to perfect or preserve its liens on the Saluda Property. Upon the filing of this case, Apex filed proofs of claim including its judgments and objected to this Motion. Nothing further was required of Apex and the evidence does not demonstrate that Apex slept on its rights.

The Court carefully reviewed the facts of *Crown Cent. Petroleum Corp. v. Elmwood Props. et al.*, 244 S.C. 588, 138 S.E.2d 38 (1964), which involved realty, and finds that case does not support application of the Doctrine on these facts.[9] *Crown* involved the avoidance and subordination of interests of collusive entities that sought to delay and defeat the enforcement of the interest held by an innocent third party judgment creditor. *Id.*

---

[9] Most of the other Diligent Creditor Doctrine cases relied on by Trustee involved personal property discovered or liquidated by another creditor. *See Gardner v. Coker et al.*, 184 S.C. 190, 192 S.E. 151 (1937); *Roddey*, 171 S.C. 489, 172 S.E. 866. Security interests in personal property are perfected differently and not as easily as real property.

at 40-41. While Trustee may wear the cloak of an innocent third party creditor in this case, Apex did not engage in any collusion nor participate in any questionable transfers to call for a subordination of its interest. Although the bankruptcy court looks to state law to analyze property rights in the bankruptcy context, Trustee has failed to show how state law and the Diligent Creditor Doctrine render Apex's interest in the Saluda Property the subject of a bona fide dispute. Therefore, the Saluda Property cannot be sold free and clear of Apex's judgment liens pursuant to § 363(f)(4).

The Court cannot find any bankruptcy authority supporting approval of the sale or distribution of the proceeds as noticed. The Bankruptcy Code imposes on Trustee the obligation to collect and liquidate property of the estate, provides a scheme of compensation for Trustee and professionals, and includes specific procedures for prioritizing interests in property of the estate and selling property of the estate free and clear of such interests. *See e.g.,* 11 U.S.C. §§ 330, 363, 507, 704, & 726. The Code also provides specific provisions for the equitable redistribution of assets through the avoidance of fraudulent transfers and liens, the avoidance of preferential transfers, the recovery of property to the estate, and the preservation of avoided transfers. *See e.g.,* 11 U.S.C. §§ 547, 548, 550, & 551. However, on these facts, none of these specific provisions empower Trustee with the authority to consummate a sale by prioritizing the estate's interest here. The Court lacks the authority to impose the equitable relief requested, which would require approval of distribution contrary to the express provisions of the Bankruptcy Code. *See Law v. Siegel*, __ U.S. __, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014).

Finally, although the evidence indicates the marketing process and sales price may be sufficient, the Motion fails to give adequate notice pursuant to Fed. R. Bankr. P.

8

2002(c)(1) and 6004, and SC LBR 6004-1. The Motion failed to sufficiently describe the Saluda Property because it included the incorrect county and, thus, an inaccurate tax map reference. The Motion also failed to acknowledge and disclose the judgment liens in favor of Apex that encumber the property. As a result, the Motion's calculation of the proceeds available for administrative costs and the "net proceeds" available for attorney's fees and, thus, the potential benefit to the estate are not accurate.

**IT IS, THEREFORE, ORDERED** that, for the reasons set forth above, the Motion is denied and the proposed sale cannot be approved.

**FILED BY THE COURT**
**11/06/2017**



US Bankruptcy Judge
District of South Carolina

Entered: 11/06/2017